**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Broadcast Music, Inc.; Sony/ATV Songs LLC d/b/a Sony/ATV Acuff Rose Music; Screen Gems-EMI Music, Inc; Songpainter Music; Tall Girl Music; Sony/ATV Songs LLC d/b/a Sony/ATV Tree Publishing; Universal-Songs of Polygram International, Inc; Warner-Tamerlane Publishing Corp; Believus Or Not Music; Glad Music Co; Paul Simon Music; Logrhythm Music; Universal-Millhouse Music, a division of Magna Sound Corporation; Bar None Music; Central Songs, a division of Beechwood Music Corporation, | CV-11-1980-PHX-BSB **ORDER** |
| Plaintiffs, | |
| vs. | |
| McDade & Sons, Inc., d/b/a Norton's Country Corner; McDade Management, LLC d/b/a Norton's Country Corner; Nancy McDade, individually; and Jason McDade, individually. | |
| Defendants. | |

In this matter, Plaintiffs assert claims of copyright infringement against Defendants. Plaintiffs allege that Defendants infringed copyrights to thirteen musical compositions by the unauthorized public performance of these compositions at Norton's Country Corner (Norton's) in Queen Creek, Arizona, on June 10 and 11, 2011. (Doc. 29.) Plaintiffs have filed a motion for summary judgment and a supporting statement of facts on their claims of

copyright infringement.  (Docs. 39 and 40.)  Defendants have filed a response and a supporting statement of facts opposing Plaintiffs' motion. (Docs. 56 and 57.) Plaintiffs have filed a reply, a response and objections to Defendants' statement of facts, and a motion to strike.[1]  (Docs. 60 and 62.)  For the reasons set forth below, the Court grants Plaintiffs' Motion for Summary Judgment and enters a permanent injunction enjoining Defendants from further infringement of Plaintiffs' thirteen copyrighted musical compositions and the musical compositions to which Plaintiff Broadcast Music, Inc. (BMI) holds the rights to enter licensing agreements.[2]

**I. Factual and Procedural Background**

On March 8, 2012, Plaintiffs filed a First Amended Complaint against Defendants McDade & Sons, Inc., d/b/a Norton's Country Corner, McDade Management, LLC d/b/a Norton's Country Corner, Nancy McDade, and Jason McDade alleging claims of copyright infringement. (Doc. 29.)  Plaintiffs allege that these Defendants owned, operated and controlled Norton's in June 2011, at the time of the public performance of the thirteen musical compositions at issue in this matter and, therefore, are liable for copyright infringement. (*Id.*)

Plaintiffs allege that they own the copyrights to, or the rights to license the performance of, the thirteen musical compositions at issue and seek the following remedies

---

[1]  The Court will deny Plaintiffs' Motion to Strike (Doc. 62) for failure to comply with Local Rule of Civil Procedure 7.2(m), which provides that "an objection to . . . the admissibility of evidence offered in support of or opposition to a motion must be presented in the objecting party's response or reply memorandum and not in a separate motion to strike or other separate filing." L.R.Civ. 7.2(m).

[2]  The thirteen songs include: "All My Ex's Live in Texas," "Baby Don't Get Hooked on Me," "Betty's Bein' Bad," "Boot Scoot Boogie a/k/a Boot Scootin' Boogie," "Brown Eyed Girl," "Eighteen Wheels and a Dozen Roses," "Fireman" a/k/a "The Fireman," "Race is On" a/k/a "The Race is On," "You Can Call Me Al," "Shake" a/k/a "The Shake," "Ring of Fire," "One Step Forward," "Only Daddy That'll Walk the Line" a/k/a "The Only Daddy That'll Walk the Line." (Doc. 40 at ¶ 20, Ex 1 at ¶ 4, Attachment A.)

provided by the Copyright Act, 17 U.S.C. §§ 502, 504, and 505: (1) an injunction prohibiting further infringing performances of any copyrighted musical compositions in the BMI repertoire; (2) statutory damages in the amount of not less than $3,000 for each of the thirteen copyright infringements; (3) costs and reasonable attorneys' fees; and (4) interest from the date of judgment.  (Docs. 29, 39.)

Plaintiff BMI is a "performing rights society," which is a nonprofit organization that licenses the right to publicly perform copyrighted musical compositions on behalf of its members and collects royalties whenever that music is performed.  (Doc. 40 at ¶ 1, Ex. 1 at ¶ 3)[3]; *see* 17 U.S.C. § 101 ("A 'performing rights society' is an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works, such as the American Society of Composers, Authors and Publishers (ASCAP), [BMI], and SESAC, Inc.").  The collection of musical compositions that BMI licenses is known as the BMI repertoire.  (Doc. 40 at ¶ 3.)  The other Plaintiffs are the copyright owners of the musical compositions that are the subject of this matter. (Doc. 40 at ¶ 2, Ex. 1 at ¶ 4.)

Through agreements with copyright owners, such as the individually named Plaintiffs, BMI acquires non-exclusive public performance rights.  BMI has acquired such rights from each of the individually named Plaintiffs in this action.  (Doc. 40 at ¶ 3; Ex. 1 at ¶ 2.)  In turn, BMI grants music users such as broadcasters, and owners and operators of concert halls, restaurants, nightclubs, and hotels the right to publicly perform any of the works in the BMI repertoire through "blanket license agreements."  (Doc. 4 at ¶ 4.)  The thirteen songs that are the subject of this action are registered with the Copyright Office and are part of BMI's repertoire. (Doc. 40 at ¶ 17, Ex. 1 at ¶¶ 4-5, Attachment A.)

At all times relevant to this matter, Defendant McDade & Sons, Inc. owned and operated Norton's, had the right and ability to direct and control activities at Norton's, and

---

[3] The exhibits to the Statement of Facts in Support of Plaintiffs' Motion for Summary Judgment (Doc. 40), are filed at Docs. 40-48.

had a direct financial interest in Norton's.  (Doc. 40 at ¶ 6; Doc. 40 at Ex. 4, Resp. to Interrog. 1-5.)  At all times relevant to this matter, Defendant Nancy McDade owned 100% of McDade & Sons, Inc., and was its sole officer and director; she had an ownership interest in Norton's, the right and ability to direct and control activities at Norton's, and the right to supervise its employees.  (Doc. 40 at Ex. 4, Resp. to Interrog. 1-5; Doc. 57-1 at ¶¶ 2 and 3.)

Defendants do not have a license from BMI to publicly perform at Norton's any songs within the BMI repertoire.  (Doc. 40 at ¶ 18, Ex. 2 at ¶¶ 4, 13, and 19, Ex. 3, Resp. to Req. for Admission 27.)  Between February 2010 and May 2011, BMI repeatedly informed Defendants of the need to obtain permission for public performances of copyrighted music within BMI's repertoire.  (Doc. 40 at ¶ 10.)  BMI conveyed this information through approximately twenty-nine letters, fifty-three telephone contacts, and at least one in-person visit.  (*Id.*)  BMI offered to enter into a blanket license agreement with Defendants, but Defendants declined to do so.  (*Id.*)  In March, April, and May 2011, BMI sent cease and desist letters instructing Defendants to cease public performance of music within the BMI repertoire.  (Doc. 40 at ¶ 11.)

On June 10, 2011, BMI sent investigator James Snyder to visit Norton's and prepare a report indicating whether copyright infringement was occurring there.  (Doc. 40 at ¶ 14.)  During his visit, Snyder made an audio recording and later created a certified infringement report of the BMI-licensed songs played at Norton's on June 10 and 11, 2011.[4]  (Doc. 40 at ¶ 14, Ex. 2 at ¶¶ 14-15, and Exs. A and C.)  In his report, Snyder personally identified eight musical compositions that were performed at Norton's — "All My Ex's Live in Texas," "Baby Don't Get Hooked on Me," "Boot Scoot Boogie" a/k/a "Boot Scootin' Boogie,"

---

[4]  Plaintiffs prepared a schedule of information related to the musical compositions at issue.  (Doc. 40 at Ex. 1, ¶ 4 and Attachment A.)  Two of the thirteen songs — "Baby Don't Get Hooked on Me" and "Betty's Bein' Bad" — were performed after midnight and are listed on the schedule as having been performed on June 11, 2011.  (*Id.*)

"Brown Eyed Girl," "Race is On" a/k/a "The Race is On," "You Can Call Me Al," "Shake" a/k/a "The Shake," and "Ring of Fire." (Doc. 40, Ex. 2 at Ex. A.)

After Snyder submitted his report and the audio recording to BMI, Joannah Carr, a BMI Performance Identification employee, reviewed the audio recording and confirmed the eight musical compositions that Snyder had identified, and she identified five additional musical compositions on the audio recording — "One Step Forward," "Only Daddy That'll Walk the Line" a/k/a "The Only Daddy That'll Walk the Line," "Betty's Bein' Bad," "Eighteen Wheels and a Dozen Roses," and "Fireman" a/k/a "The Fireman." (Doc. 40 at Ex. 2 at Ex. A.)

After BMI confirmed that all thirteen songs are part of its repertoire, on June 27 and June 29, 2011, BMI sent letters to Defendants notifying them of the investigation and that BMI believed copyright infringement had occurred at Norton's on June 10 and 11, 2011. (Doc. 40 at ¶ 19, Ex. 2 at ¶ 16 and Ex. B.) Defendants did not respond. (*Id.*)

**II. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 authorizes the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A burden shifting analysis applies to motions for summary judgment under Rule 56. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.* (*In re Oracle Corp. Sec. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010).

---

[5] Although Rule 56 was amended in 2010, the amendments did not alter the standard for granting summary judgment. *See* Fed. R. Civ. P. 56 advisory committee's note (2010 amendments) ("The standard for granting summary judgment remains unchanged.") Because the amendments merely sought "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts[,]"cases applying the prior version of Rule 56 remain applicable. *Id.*

The moving party bears the initial burden of informing the court of the basis for its motion, and identifying the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56 advisory committee's note (2010 amendments) (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). To avoid summary judgment, the opposing party must demonstrate the existence of a factual dispute that is both material, meaning it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, meaning "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (quoting *Anderson*, 477 U.S. at 248).

Furthermore, a party opposing summary judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact."[6] Fed. R. Civ. P. 56(c)(1)(A)-(B).   The opposing party "must show more than the mere existence of a scintilla of evidence."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(a).  The court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

**III.  Copyright Infringement**

The Copyright Act gives the owner of a copyright the exclusive right to publicly perform, or authorize others to perform, the copyrighted work.  17 U.S.C. § 106(4).  Any person who violates this exclusive right is an infringer.  *Id.* at § 501(a).  To establish a prima facie case of copyright infringement, a plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012) (quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006)).  "The word 'copying' is shorthand for the infringing of any of the copyright owner's [six] exclusive rights," one of which is the right "to perform the copyrighted work publicly."  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989); *see also* 17 U.S.C. § 106(4)

---

[6]  "The court need consider only the cited materials, but may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

(reserving to owners of copyrights in musical works the exclusive right "to perform the copyrighted work publicly").

Several courts have broken the prima facie case into the following five elements: "(1) originality and authorship of the work involved; (2) compliance with all formalities required to secure a copyright under the Act; (3) plaintiff's ownership of the copyright in question; (4) public performance of the work; and (5) lack of authorization for the performer to perform the work." *Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc*., 855 F. Supp. 1314, (D. Mass. 1994); *see also Hickory Grove Music v. Andrews,* 749 F. Supp. 1031, 1035 (D. Mont*.* 1990) (same)*; Broadcast Music, Inc. v. Pine Belt Inv. Dev., Inc.*, 657 F. Supp. 1016, 1020 (S.D. Miss. 1987) (same).  As discussed below, Plaintiffs have established these five elements.

### A.  The First Three Elements — Originality, Registration, and Ownership

The uncontroverted facts contained in the Declaration of BMI's Assistant Vice President, Legal, Kerri Howland-Kruse, which includes a schedule of the musical compositions at issue and copies of the copyright registration certificates for these compositions, establishes the originality, registration, and ownership interest elements of copyright infringement.  (Doc. 29, Ex. A; Doc. 40 at ¶¶ 20-21, Ex. 1 at ¶¶ 4-5 and Ex. A.) *See Broadcast Music, Inc. v. 3–B, Inc.*, 1996 WL 426486, *2 (E.D. Mich. Jan. 16, 1996) (affidavits in support of copyright infringement action constitute sufficient evidence of the undisputed facts) (citing *Pine Belt*, 657 F. Supp. at 1020).

Each of the musical compositions listed on the schedule attached to the Howland-Kruse declaration was registered with the Copyright Office.  (Doc. 40 at ¶ 20, Ex. 1 at ¶ 4 and Ex. A..)  The Copyright Office issued registration certificates to the Plaintiffs for each of the compositions at issue.  (*Id.*)  "Registration is prima facie evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000); *see also Hickory Grove*, 749 F. Supp. at 1036 (copyright certification records constitute prima facie evidence of originality, compliance with formalities, and ownership of copyrights).

Defendants do not offer any evidence to dispute these first three elements. Accordingly, the Court concludes that Plaintiffs have established the originality and authorship of the compositions at issue, compliance with registration formalities, and ownership of the copyrights and, therefore, have established the first three elements of their copyright infringement claims against Defendants.

**B.  The Fourth Element — Public Performance**

The BMI investigator's certified infringement report, and the audio recording documenting the musical compositions from the BMI repertoire that were played at Norton's on June 10 and 11, 2011, establish the public performance of those copyrighted works.  *See Hickory Grove*, 749 F. Supp. at 1036 (uncontradicted affidavit of investigator established performance of musical compositions at defendant's restaurant); *Pine Belt*, 657 F. Supp. at 1020 (public performance may be established by certification).  BMI hired an investigator to visit Norton's on June 10, 2011 to record the musical compositions publicly performed there.  (Doc. 40 at ¶ 14, Ex. 2 at ¶ ¶ 14-15 and Ex. A.)

The investigator's certified infringement report and the audio recording he made establish that the thirteen musical compositions at issue in this matter, as alleged in the Amended Complaint, were performed at Norton's.  *See Broadcast Music, Inc. v. Hampton Beach Casino Ballroom, Inc.*, 1995 WL 803576, *4 (D. N.H. Aug. 30, 1995) ("'It is well settled that investigators' affidavits can constitute sufficient proof of live public performance.'") (citing *Broadcast Music, Inc. v. Larkin*, 672 F. Supp. 531, 533 (D. Me. 1987)); *Broadcast Music, Inc. v. Paden*, 2011 WL 6217414, *4 (N.D. Cal. Dec. 14, 2011) (finding that investigator's certified infringement report and BMI music researcher's review of investigator's audio recording established performance of the musical compositions alleged in the complaint).

In their response, Defendants cite only *BMI v. 84-88 Broadway, Inc*., 942 F. Supp. 225 (D. N.J. 1996).  But that case holds that certified infringement reports establish "public performance."  *Id.* at 229-30 ("It is well settled that investigators' affidavits can constitute

sufficient proof of live performance," rejecting defendants' vague complaints about the clarity and completeness of the report.)   Accordingly, the certified infringement report (Doc. 40 at Ex. 2, Ex. A) is sufficient to establish public performance of eight of the thirteen songs at issue.

Defendants also argue that not all of the thirteen songs were performed at Norton's on the relevant dates.  (Doc. 56 at 5.)  Although Defendants admit that at least six of the thirteen songs at issue were either "probably" or "perhaps" performed at Norton's on June 10 and 11, 2011, they dispute that the other seven were performed that night.[7]  To support their contention, Defendants challenge the clarity of the audio recording. The authenticity of the audio recording, however, was verified by the first-hand observation of the BMI investigator who visited Norton's and who logged the songs that were played, and was further verified by other BMI employees who listened to it and confirmed that all thirteen songs at issue are heard on the recording.  (Doc. 40 at ¶ 15, Ex. 2 at ¶ ¶ 14-15, Ex. A.) Defendants do not offer any competent evidence to create a genuine dispute about the veracity of the certified infringement report or the evidence on the audio recording. Defendants' assertion that the CD is "mostly unintelligible" does not create a genuine dispute of material fact regarding whether the thirteen songs at issue were publicly performed at Norton's.  (Doc. 56 at 4-5.)

---

[7] In their response to Plaintiffs' First Set of Requests for Admissions Defendants deny that the following songs were played at Norton's on the relevant dates: "Baby Don't Get Hooked on Me," "Betty's Bein' Bad," "All My Ex's Live in Texas," "Eighteen Wheels and a Dozen Roses," "Race is On" a/k/a "The Race is On,"  "You Can Call Me Al," and "One Step Forward."  (Doc. 40 at Ex. 3, Resp. to Req. for Admissions 16 and 17.)  Defendants state that it is possible that the following songs were played: "Boot Scoot Boogie a/k/a Boot Scootin' Boogie," "Brown Eyed Girl," "Fireman," "Shake" a/k/a "The Shake," "Ring of Fire," and "Only Daddy That'll Walk the Line."  (Doc. 40 at Ex. 3, Resp. for Req. for Admissions 14-16.)  Defendants do not cite to their admissions in their response to the motion for summary judgment.

Defendants also submit an unsigned affidavit from band leader Phil Bidegain and Defendant Nancy McDade's notes of a conversation with Bidegain, which purport to establish that Bidegain's band did not perform seven of the musical compositions at Norton's on the dates at issue.  (Doc. 56 at 5, Doc. 57, McDade Decl. at ¶ ¶ 11-12 and Exs. 1 and 2.) The affidavit of band leader Phil Bidegain is inadmissible because it is not signed by him. (Doc. 57 at Ex. 1); *see* Fed. R. Civ. P. 56(c)(2); *Orr v. Bank of America*, 285 F.3d 764, 778 (9th Cir. 2002) (court can only consider admissible evidence when ruling on a motion for summary judgment). Additionally, Nancy McDade's notes of her conversation with Bidegain are inadmissible hearsay.  (Doc. 57 at Ex. 1); *Orr*, 285 F.3d at 778 (9th Cir. 2002) (hearsay evidence is inadmissible and thus may not be considered on summary judgment).  Thus, there is no admissible evidence to create a genuine dispute regarding whether all thirteen songs at issue were performed at Norton's.

Additionally, Defendants' assertion that the live band did not play seven of the compositions at issue does not create a genuine dispute regarding a material fact because it assumes that all of the music on the relevant dates was played by the live band.  But, as the certified infringement report verifies, some of the songs were played by the live band and others were played by a computer-generated media source during the band's breaks. (Doc. 40 at Ex. 2, Ex. A.)  Both live and non-live sources constitute public performance.  *See* 17 U.S.C. § 101 ("To 'perform' a work means to recite, render, play, dance, or act it, either directly or by means of any device or process."); *Range Road Music, Inc.*, 668 F.3d at 1153 n.2 (both musical tracks played from a compact disc player and compositions performed by a live band were "performed" for purposes of the Copyright Act, 17 U.S.C. § 101.)  Thus, Defendants' assertion that the live band did not play all thirteen of the songs, even if admissible, does not preclude summary judgment.  Accordingly, the Court finds that the Plaintiffs have established that the thirteens songs at issue were publicly performed at Norton's on June 10 and 11, 2011.

### C.  The Fifth Element — Lack of Authorization

The fifth element, lack of authorization, is established by the undisputed fact that Defendants were not licensed by BMI on the dates in question to perform Plaintiffs' copyrighted musical compositions.  (Doc. 40 at ¶ ¶ 9-10, 17-18, Ex. 3 at Resp. to Req. for Admission 27.)  Plaintiff BMI sent several cease and desist letters to Defendants.  (Doc. 40 at ¶ ¶ 11-13.)  Defendants did not respond to these letters.  Furthermore, Defendants admit they were not licensed by BMI or any of the other Plaintiffs to perform any of their musical compositions at Norton's.  (Doc. 40 at ¶ 18, Ex. 3, Resp. to Req. for Admission 27.)

Although Defendants admit they were not licensed to perform the musical compositions at issue, they argue that "BMI never advised [them] in any manner of their rights pursuant to 17 U.S.C. § 513 respecting the rights of single bar owners such as Defendant to file an application for the determination of an appropriate and/or reasonable license rate or fee."  (Doc. 56 at 6.)  Defendants have not cited any authority indicating that BMI had such an obligation.  Moreover, the record reflects that BMI sent numerous letters informing Defendants of the need to obtain permission from copyright owners to lawfully publicly perform copyrighted music at Norton's.  (Doc. 48 at 3-5.)  Therefore, the Court finds that Plaintiffs have established the fifth element of their copyright infringement claims against Defendants.

### IV.  Defendants' Assertions and Defenses

### A.  Non-Exclusivity and Failure to Join Indispensable Parties

Defendants assert several additional arguments in opposition to the motion for summary judgment.  First, Defendants argue that BMI is not entitled to summary judgment because its licensing and enforcement rights are non-exclusive as to the composers and songs at issue.  (Doc. 56 at 3.)  The non-exclusive nature of BMI's licensing agreements, however, does not deprive BMI of the right to enforce the copyrights at issue. *See Broadcast Music, Inc. v. TTJ's Inc.*, 2010 WL 2867814, *1 (D. Idaho Jul. 20, 2010) (noting BMI rights are "nonexclusive" and granting summary judgment for BMI on its copyright infringement

claims). The assignments BMI receives from its "affiliates" (songwriters and music publishers who assign their copyrights to BMI) for the millions of songs in the BMI repertoire are non-exclusive because each BMI affiliate retains the right to separately grant permission to a particular user for the public performance of its songs.[8]  Absent such direct permission, however, a user must purchase a BMI license to obtain the right to publicly perform a song in the BMI repertoire.  (Doc. 60 at 1-2, n.1 and Ex. A.)

Defendants further argue that summary judgment is inappropriate because Plaintiffs have failed to join indispensable parties — ASCAP and SESAC.  (Doc. 56 at 4.)  Although ASCAP and SESAC are performing rights societies like BMI, *see* 17 U.S.C. § 101, Defendants have not offered any evidence that any of the compositions at issue were also subject to an ASCAP or SESAC license. Even though BMI has non-exclusive rights to license its affiliates' copyrighted works, that non-exclusivity does not allow the affiliates to license with any other performing rights society.  Rather, that non-exclusivity permits the affiliate itself to license the performance of its compositions.  (Doc. 60 at 2, n.2.)   Thus, ASCAP and SESAC are not indispensable parties to this action. *See* Fed. R. Civ. P. 19(a). Defendants' arguments pertaining to non-exclusivity and indispensable parties lack merit.

### B. Promotional Value

Next, Defendants re-urge a "promotional value" argument they asserted during a Rule 16 scheduling conference in February 2012.  (Doc. 36 at 5-6.)  They argue that no copyright infringement occurred because the live band's performance of copyrighted songs at Norton's provides "promotional value" to the copyright owners by peaking a listener's interest in the song or calling to mind fond memories related to the song, which in turn may lead the listener

---

[8]  The non-exclusive nature of these assignments is required by a Consent Decree, issued by the Southern District of New York, that governs BMI's operations.  (Doc. 60 at 2, n.1 and Ex. A.)  The Consent Decree requires that BMI "allow[] (its affiliated songwriters and publishers) to issue a music user making direct performances to the public a non-exclusive license permitting the making of such specified performances." *Id.*; *see Broadcast Music, Inc. v. Weigel Broadcasting*, *Co*., 488 F. Supp. 2d. 411, 412 n.1 (S.D.N.Y. 2007).

to purchase the artist's music.  (Doc. 56 at 6-7.)  Although Defendants state that this theory is "supported by copyright law in print," they do not cite any such authority.  (*Id*. at 7.)

Furthermore, if accepted, Defendants' argument would effectively eliminate the protections of the Copyright Act because, under Defendants' "promotional value" theory, any person infringing a copyright could escape liability by simply asserting that the infringing conduct provided an intangible promotional value to the copyright owner.  Defendants' further argument that "[n]obody coming to [Norton's] will ever be confused and think, 'Oh, my gosh, that's George Straight up there singing," is also unavailing.  Customer confusion is not the standard for copyright infringement.  *See Range Road Music,* 668 F.3d at 1153.

## C. Fair Use or Parody

Defendants further argue that the music performed at Norton's falls under the parody or fair use exception to copyright law.  (Doc. 56 at 6.)  As an example, Defendants argue that "Sweet Home Alabama," as played at Norton's, is a parody because the band "may" change the word "Alabama" in the song to "Arizona."  (Doc. 57-1 at 3.)  "Sweet Home Alabama" is not one of the thirteen musical compositions at issue, and Defendants do not identify which of the compositions at issue falls within this exception.

Parody is a subset of fair use, and is evaluated under the criteria set forth in 17 U.S.C. § 107.  *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 581 (1994) (holding that parody may claim fair use § 107).  Defendants' argument does not satisfy the criteria for fair use or parody.  First, the use of the copyrighted songs at issue were "of a commercial nature," not "for nonprofit educations purposes." 17 U.S.C. § 107(1).  Second, changing one word in a song does not "create a new [composition] that, at least in part, comments on [the original] author's works." *Id*. at 580.  Third, the thirteen songs at issue are "strong" copyrights — fictional lyrical stories rather than factual works — and thus deserve greater protection.  *Campbell*, 510 U.S. at 586.  Fourth, changing "Alabama" to "Arizona" is not the type of true parody that does not "supplant[] the original." *Fisher v. Dees*, 794 F.2d 732, 438 (9th Cir. 1986).  And fifth, the copying here "is virtually complete or almost verbatim and will not be

- 14 -

protected." *Id*. at 438.  Defendants have not shown that any of thirteen musical compositions played at Norton's on the relevant dates could be considered fair use or parody.

**D.  Fairness**

Defendants contend that the copyright laws are unfair to small bar owners "struggling to get by week by week."  (Doc. 56 at 2 and 8.)  Defendants appear to seek an exemption from complying with the Copyright Act, but have not cited any authority for such an exemption.  Furthermore, Defendants appear to make a policy argument, which is not an issue before this Court.

**E.  Norton's Lack of Profit**

Finally, Defendants contend that they have no liability for the infringing conduct because Norton's did not make a profit on the date or weekend the infringements occurred.  (Doc. 56 at 5.)  The only case Defendants cite, *84-88 Broadway,* does not support their argument.  In *84-88 Broadway*, the court held that it

> may infer that a defendant derived some pecuniary benefit from the public performance. . . . Accordingly, because this Court finds it only logical to assume that the Defendants hosted such public performances in order to attract customers whose patronage enables the Defendants to make a profit, or at a minimum, increase their revenue, the Court will infer that the Defendants derived pecuniary benefit from the public performances. 'If music did not pay, it would be given up.'

942 F. Supp. at 230 (citing *Herbert v. Shanley Co.*, 242 U.S. 591, 595 (1917)).

This case does not support Defendants' position because their ownership and operation of Norton's was designed and intended as a for-profit business.  There is no evidence in the record suggesting that Defendants played live or computer-generated music at Norton's for a purpose other than making a profit.  Defendants have not cited any legal authority in support of the proposition that infringement liability requires an examination of whether the establishment's revenues exceeded its expenses on the precise dates on which infringements occurred.  "The fact that the defendants were unsuccessful in their operation

- 15 -

is not relevant." *Criterion Music Corp. v. Biggy's Inc.*, 701 F. Supp. at 802, 804 (D. Kan. 1988).

## V. Defendants' Liability under the Copyright Act

The Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by Sections 106 through 121 . . . is an infringer of the copyright . . . ." 17 U.S.C. § 501(a). A vicarious infringer "profit[s] from direct infringement while declining to exercise a right to stop or limit it." *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975) ("An orchestra or individual instrumentalist or singer who performs a copyrighted musical composition in such a public place without a license is thus clearly an infringer under the [Copyright Act]." The sponsor of such a public performance is also an infringer.).

### A. Defendant Jason McDade

Plaintiffs filed this suit against Defendants McDade & Sons, Inc., d/b/a Norton's Country Corner, McDade Management, LLC d/b/a Norton's Country Corner, Nancy McDade and Jason McDade. (Doc. 1.) Plaintiffs, however, have not served Defendant Jason McDade despite having been given an extension of time to determine whether Jason McDade was a proper party to this action and to complete service of process. (See Doc. 59.) In their reply, Plaintiffs "acknowledge that there is not sufficient evidence to conclusively establish, as a matter of law, the liability of Defendant[] . . . Jason McDade." (Doc. 60 at 5.) In view of Plaintiffs' failure to serve Defendant Jason McDade, the Court will dismiss their claims against him pursuant to Federal Rule of Civil Procedure 4(m).

### B. Defendant McDade Management, LLC

Defendants assert that McDade Management, LLC "has no role whatsoever in the operation, management, ownership or control of Norton's." (Doc. 57 at ¶ 2, McDade Decl. at ¶ 4.) In response to an interrogatory, Defendants responded that McDade Management, LLC "is an inactive company with no assets and no active role in any business activity."

(Doc. 40 at Ex. 4, Resp. to Interrog. 7.)   Plaintiffs have not presented any evidence suggesting that Defendant McDade Management, LLC, has any involvement, direct or vicarious, in the conduct giving rise to this action.

Furthermore, in their reply in support of their motion for summary judgment, Plaintiffs "acknowledge that there is not sufficient evidence to conclusively establish, as a matter of law, the liability of Defendant[] McDade Management." (Doc. 60 at 5.)  Although Plaintiffs' October 5, 2012 reply states that they are "following up to obtain discovery" and will "raise the issue with the Court if necessary," there is nothing in the record since that date establishing liability as to Defendants McDade Management, LLC or Jason McDade and discovery has closed.  (Doc. 35.)

Therefore, the Court will deny summary judgment against Defendant McDade Management, LLC and will order Plaintiffs to show cause why their claims against McDade Management LLC should not be dismissed.

### C.   Defendant McDade & Sons, Inc.

Defendants admit that McDade & Sons, Inc. owned, operated, and managed Norton's at all relevant times.  (Doc. 40-1 at Ex. 4, Resp. to Req. for Admissions 1-4; Doc. 57, mcDade Decl. At ¶ 3.)  As the sponsor of the public performances, Defendant McDade & Sons, Inc. is liable for infringing acts committed at Norton's.  *See Broadcast Music, Inc. v. Niro's Palace, Inc*., 619 F. Supp. 958, 961 (N.D. Ill. 1985) ("[n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance.") (citing *Aiken*, 422 U.S. at  157).

### D.  Defendant Nancy McDade

Plaintiffs also assert that Nancy McDade, in her individual capacity, should be held jointly and severally liable for the copyright infringements.  "The test for finding a corporate officer jointly and severally liable with his corporation for copyright infringement is whether the officer 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'"  *Chi-Boy Music v. Towne Tavern, Inc*., 779 F. Supp.

- 17 -

527, 530 (N.D. Ala.1991) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d

304, 307 (2d Cir.1963)); *see also Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814,

823-24 (9th Cir. 1996) (noting that a corporate officer or director is, in general, personally

liable for all torts which he authorizes or directs or in which he participates, notwithstanding

that he acted as an agent of the corporation and not on his own behalf).

Defendant Nancy McDade admits she had a direct financial interest in Norton's on

the relevant dates.  (Doc. 40, Ex. 4 at Resp. to Req. for Admissions 1-5, 7.)  She also

acknowledges that she is the sole owner of McDade & Sons, Inc., that she had an ownership

interest in Norton's during the relevant time, that she had "the right and ability to direct and

control the activities of Norton's," that she had "the right and ability to supervise the

employees of Norton's," and that her duties at Norton's included "[a]ny and all duties

associated with bar ownership and managing from plunging a toilet to financial decisions."

(Doc. 40, Ex. 4 at Resp. to Req. for Admissions 1-5, 7.)  In response to interrogatories,

Nancy McDade also stated that live music is played at Norton's two nights a week and some

form of music, recorded or otherwise, is played seven days per week.  (Doc. 40, Ex. 4 at

Resp. to Req. for Admissions 11-12.)  Defendants have not presented any evidence to create

a genuine issue of fact regarding whether Defendant Nancy McDade had the right and ability

to make decisions related to the performance of music at Norton's.  Thus, the record reflects

that Nancy McDade had a financial interest in Norton's and possessed the right and power

to supervise the infringing activity.

Defendants argue that Nancy McDade is not liable for the copyright infringements

because she was in the hospital on the dates at issue and was not physically present at

Norton's.  (Doc. 56 at 7.)  Defendants cite *BMI v. 84-88 Broadway* to support this argument.

Defendants' reliance on this case is misplaced.  In *84-88 Broadway*, the court found that

plaintiffs "failed to present the Court with any evidence that the [shareholder/owner] has the

right and ability to supervise the infringing activity."  942 F. Supp. at 232.  Unlike that case,

here Defendants' discovery responses acknowledge that Nancy McDade is the owner and

manager of Norton's and that she has the ability to control its operations.  (Doc. 40, Ex. 4 at Resp. to Req. for Admissions 1-5, 7.)

Furthermore, Nancy McDade acknowledges that on the date of the infringing conduct, even though she was in the hospital, "the business operated by virtue of trained staff who merely performed their job duties in the manner in which they regularly did" and that "there was nothing known to [Nancy McDade] which occurred that was out of the ordinary." (Doc. 57, McDade Decl. at ¶ 9.)  The Court finds that Nancy McDade is jointly liable with McDade & Sons, Inc. for the copyright infringements at Norton's on June 10 and 11, 2011. *See Chi–Boy Music*, 779 F. Supp. at 530-31 (even if the individual "hired someone to handle day-to-day affairs and . . . had no role in the selection of music played in the club . . . vicarious liability for copyright infringement on a controlling individual is premised on the belief that such a person is in a position to control the conduct of the 'primary' infringer.").

## VI.  Statutory Damages

Plaintiffs request a total award of $39,000, or $3,000 for each of the thirteen acts of infringement.  The Copyright Act provides that a plaintiff can receive an award of statutory damages "in a sum not less than $750 or more than $30,000" for each infringement. 17 U.S.C. § 504(c)(1).  If the copyright infringement is willful, "the court in its discretion may increase the award of statutory damages to an award of not more than $150,000." 17 U.S.C. § 504(c)(2).  The court has the discretion to assess damages within these statutory limits. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-232 (1952).

### A.  Willful Violations

A defendant willfully infringes on the copyright of another by acting "with knowledge that the defendant's conduct constitutes copyright infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 n.3 (9th Cir. 1990) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.04[B], at 14-40.2-.3 (1989)).  This "knowledge standard" does

not require that a defendant act with the "specific intent" to violate the copyright protection. *See Peer Int'l Corp.*, 909 F.2d at 1335-36.

The record reflects that Defendants' infringements were knowing and willful. Between February 2010 and June 2011, BMI repeatedly informed Defendants of the need to obtain permission or a license for public performances through a series of written correspondence and fifty-three telephone contacts. BMI repeatedly notified Defendants of the need to enter into a blanket license agreement, but Defendants declined to do so.

Defendants contend that the infringements were not "knowing and willful" because they did not receive all twenty-nine of the letters BMI sent and did not receive a response to their April 22, 2011 letter. The record reflects that Plaintiffs sent the letters to Norton's and includes receipt and confirmation documents indicating that Defendants received and signed for a number of the letters. (Doc. 40, Ex. 2 at ¶¶ 3, 5, 7.) Further, Defendants acknowledge that they received at least some of the fifty-three phone calls BMI made. (Doc. 57 at 2.) Even if Defendants did not receive all twenty-nine letters, there is no genuine dispute that Defendants were on notice of the need to obtain a license.

In addition, contrary to Defendants's assertion, the record reflects that BMI responded to Defendants' April 22, 2011 letter. (Doc. 40, Ex. 2 at ¶ 8.) In a May 3, 2011 letter, BMI responded to Defendants' questions and directed them to a BMI website for a complete list of songs in the BMI repertoire that a BMI license would cover. (*Id.*) The record reflects that Defendants acted with knowledge that their conduct constituted copyright infringement. Defendants therefore willfully and deliberately violated Plaintiffs' copyrights.

### B. Amount of Damages

Statutory damages further "compensatory and punitive purposes," and help "sanction and vindicate the statutory policy of discouraging infringement." *L.A. News Serv. v. Reuters Television Int'l.*, 149 F.3d 987, 996 (9th Cir. 1998) (internal quotation marks omitted). To further discourage continued abuse and give effect to the Copyright Act, the amount awarded in statutory damages should significantly exceed the amount of unpaid license fees. *See EMI*

*Mills Music, Inc. v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 75-76 (D. Puerto Rico 2006). "'If the copyright laws are to have any effect, a judgment against [a] defendant must be appreciably more than the amount he would have had to expend to obtain permission.'" *Broadcast Music, Inc. v. TLM Investments, P.L.C.,* 2010 WL 2891524, *5 (D. Ariz. Jul. 21, 2010) (quoting *Prater Music v. Williams*, 5 U.S.P.Q.2d at 1816 (W.D. Mo. 1987)).  Music users should be "put on notice that it costs less to obey the copyright laws than to violate them."  *Music City Music v. Alfa Foods Ltd.*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985).

Courts have found judgments of three times the lost registration fees is a "just" award *See Halnat Pub. Co. v. L.A.P.A., Inc.*, 669 F. Supp. 933 (D. Minn. 1987) (awarding three times the lost registration fees of $10,842 which amounted to $32,526, totaling over $2,700 per infringement); *Broadcast Music, Inc. v. Entertainment Complex, Inc.*, 198 F. Supp. 2d 1291 (N.D. Ala. 2002) (awarding plaintiffs statutory damages of $3,909.09 per infringement, $43,000 in total — approximately three times the amount of unpaid licensing); *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994) (noting that courts typically award three times the amount of the licenses fee for each infringement and that damages range from $1,500 to $5,000 per infringement).

Here, Plaintiffs' request of $39,000 in statutory damages for Defendants' infringement furthers the statutory purposes of the Copyright Act.  If Defendants had entered into a license agreement when BMI first contacted them in February 2010, between February 2010 and January 2012 they would have paid BMI estimated license fees in the amount of $6,440.00. (Doc. 39 at 9, n.6; Doc. 40, Ex. 2 at ¶ 19.)  In addition, the licensing fee in 2012 was $3,255.00  (*Id.*)  Thus, Plaintiffs' requested amount, $39,000, is roughly four times the licensing fees that would have been due, and effectuates the purposes of an award of statutory damages under the Copyright Act — to discourage abuse and give effect to the Copyright Act. *See EMI Mills Music, Inc.* 470 F. Supp. 2d at 75-76 (the amount awarded in statutory damages should significantly exceed the amount of unpaid license fees).

1      Considering Defendants' willful violations, which authorize the Court to impose

2  damages up to $150,000 per infringement, the Court finds that Plaintiffs' requested amount

3  of $39,000 is reasonable and appropriate.

4  **VII.  Attorneys' Fees and Costs**

5      Plaintiff also request attorneys' fees pursuant to 17 U.S.C. § 505 of the Copyright Act.

6  Under the Copyright Act, a court may "award a reasonable attorney's fee to the prevailing

7  party." 17 U.S.C. § 505. "Fees are proper under this statute when either successful

8  prosecution or successful defense of the action furthers the purposes of the Copyright Act."

9  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007). As such, courts

10  routinely award the reasonable fees incurred by a plaintiff. *Broadcast Music, Inc. v. Fox

11  Amusement Co.*, 551 F. Supp. 104, 109-10 (N.D. Ill. 1982). Whether to award attorneys' fees

12  is in the trial court's discretion. When making such a determination, the court may consider

13  several non-exclusive factors including "frivolousness, motivation, objective

14  unreasonableness (both in the factual and in the legal components of the case) and the need

15  in particular circumstances to advance considerations of compensation and deterrence." *See

16  Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994) (quoting *Lieb v. Topstone Indus.,

17  Inc.*, 788 F.2d 151, 156 (3d Cir.1986)).

18      When applying the above factors, a court must remain "faithful to the purposes of the

19  Copyright Act" which include not only "[securing] a fair return for an 'author's creative

20  labor," but also the "[stimulation of] artistic creativity for the general public good." *Fogerty*,

21  510 U.S. at 526-7 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156

22  (1975)). If an award of fees would not comport with these policies, the court should not

23  award fees. *Fantasy Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir. 1996). The Copyright Act

24  also expressly provides that the Court "in its discretion may allow the recovery of full costs

25  by or against any party . . . ." 17 U.S.C. § 505. Under this provision, the courts have allowed

26  full recovery by the prevailing party of its reasonable costs. *Milene Music, Inc. v. Gotauco*,

27  551 F. Supp. 1288, 1297 (D. R.I. 1982).

28

The Court finds that an award of attorneys' fees and costs is appropriate in this case. Consistent with the Local Rules of Civil Procedure, the Court will consider the appropriate amount of costs and attorneys' fees after Plaintiffs submit documentation and verification in accordance with Local Rules of Civil Procedure 54.1 and 54.2(c)(3) and (d).

**VIII.  Injunction**

Finally, Plaintiffs ask the Court to permanently enjoin Defendants from infringing in any manner the copyrighted musical compositions licensed by BMI. (Doc. 39 at 7).  A court may grant "temporary and final injunctions on terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "'A permanent injunction is especially appropriate where a threat of continuing infringement exists.'" *TLM Investments, P.L.C.,* 2010 WL 2891524, at *8 (quoting *Broadcast Music, Inc. v. Niro's Palace, Inc.* 649 F. Supp. 958, 963 (N.D. Ill. 1985)).  In this case, there is a substantial threat of continuing infringement.  As in *TLM Investments* and *Niro's Palace*, Norton's "provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI." *See Niro's Palace, Inc.*, 649 F. Supp. at 963.

Defendants wilfully disregarded Plaintiffs' copyrights.  Because Defendants received numerous calls, letters, and cease and desist notices from BMI but did not cease infringement, a permanent injunction is warranted to prevent future copyright violations. *See TLM Investments*, 2010 WL 2891524, at *8 (entering permanent injunction enjoining defendants from infringing on plaintiff's copyrighted musical compositions).

Accordingly,

**IT IS ORDERED** that Plaintiffs' claims against Defendant Jason McDade are **DISMISSED** without prejudice for failure to serve pursuant to Fed. R. Civ. P. 4(m).

**IT IS FURTHER ORDERED** that on or before **April 4, 2013** Plaintiffs shall show cause why their claims against Defendant McDade Management, LLC should not be dismissed.

1
2
3

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 39) is **GRANTED** as to their claims against Defendants  McDade & Sons, Inc. d/b/a Norton's Country Corner and Nancy McDade.

4
5
6

**IT IS FURTHER ORDERED** that Plaintiffs are awarded the following damages against Defendants McDade & Sons, Inc. d/b/a Norton's Country Corner and Nancy McDade jointly and severally:

7
8
9

a.    Statutory damages in the amount of $3,000.00 for each of the thirteen infringements, for a total of $39,000.00, pursuant to 17 U.S.C. § 504(c)(1), and interest on these amounts from the entry of judgment pursuant to 28 U.S.C. § 1961; and

10
11

b.    Attorneys fees and costs, in an amount to be determined in accordance with Local Rules of Civil Procedure 54.1 and 54.2(c)(3) and (d).

12
13
14
15
16
17

**IT IS FURTHER ORDERED** that Defendants McDade & Sons, Inc. d/b/a Norton's Country Corner, Nancy McDade, their respective officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, are permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Broadcast Music, Inc.  Information pertaining to such compositions can be found at www.bmi.com.

18
19

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Portions of Defendants' Statement of Facts (Doc. 62) is **DENIED**.

20

DATED this 5th day of March, 2013.

21
22
23
24

Bridget S. Bade
United States Magistrate Judge

25
26
27
28